UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TOMMY LEE COX, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 1:22-CV-1998-SEG |
| CATHELENE "TINA" ROBINSON, individually and in her official capacity as Fulton County Clerk of Superior and Magistrate court, and JOHN DOES 1 THROUGH 100, individually and in their official capacity as Fulton County Chief Deputy Clerk, Assistant Chief Deputy Clerk(s), and Clerk(s) and in the employment of Georgia's Fulton County Office of Clerk of Superior and Magistrate Court, | |
| Defendants. | |

**O R D E R**

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 9).  The motion is fully briefed.[1]  (Docs. 11, 14, 15.)  For the reasons that follow, the Court **GRANTS** the motion.

---

[1] Plaintiff has filed a surreply to the motion without seeking leave of court, and Defendants have filed an objection.  Because Plaintiff proceeds *pro se*, and because acceptance of the surreply will cause no prejudice in this case, Defendants' objection (Doc. 16) is **OVERRULED**.

## I.     Background

Plaintiff brings a variety of constitutional claims under 42 U.S.C. §§ 1983, 1985, and 1986, as well as claims under the Constitution of the State of Georgia, against Defendant Robinson and one hundred fictitious defendants. Defendant Robinson was, at the times relevant to this action, the Clerk of the Fulton County Superior and Magistrate Court.  The John Doe defendants are other employees of the clerk's office of that court.

Plaintiff's claims against these defendants all arise out of the refusal of Defendant Robinson and her office to accept certain filings Plaintiff attempted to make in the Fulton County Superior Court in 2020 and 2021.  The Court accepts the well-pled allegations in Plaintiff's complaint as true, as it must at this stage.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012). And it construes Plaintiff's filings liberally, as he proceeds *pro se*.  *See Lorisme v. I.N.S.*, 129 F.3d 1441, 1444 n.3 (11th Cir. 1997).

Plaintiff alleges that he is "Creditor to recorded Judgment (#2004CV93291) and Secured Party Creditor to Judgment in Georgia."[2]  (Doc. 1 ¶ 25.)  In order to collect on the judgment, he sought to file for a writ of fieri

---

[2] The complaint does not shed light on the nature of the alleged judgment. Plaintiff's briefing refers to the judgment as one entered by a so-called "three judge notary panel" (Doc. 11-1 at 5) against Cobb County Superior Court Judge Adele Grubbs and others in the amount of $2 billion.  (Doc. 11-6 at 15-17.)

facias in the Superior Court of Fulton County.  (Id. ¶ 27.)  First he attempted to file by mail—the dates are unspecified, except that this took place during the COVID-19 pandemic—but his filings were eventually return to him.  (Id. ¶ 28.)

He then attempted to file in person, first on March 31, 2021, and then on June 23, 2021.  (Id. ¶ 28-30.)  Allegations regarding the events that transpired on these visits to the Superior Court are scattered throughout the complaint, but the visits are described in the attached affidavits of several other men Plaintiff brought with him when he attempted to file his papers.   These affidavits state that on the March 31 visit, Plaintiff's papers were rejected because, he was told, it had been ordered that he could not make any pro se filings without the "OK" of a judge.  (Doc. 1 at 51-59.)  On the June 23 visit, his papers were again rejected by the clerk, who directed him to file with the magistrate judge's clerk.  (*Id.* ¶¶ 60-67; *see also* ¶¶ 69-70.)  But the magistrate judge's clerk told him that the filing appeared not to be a matter for the magistrate judge and directed him back to the other clerk's office.  (*Id.*)  At this point, Plaintiff left the courthouse.

The upshot of the allegations is thus that Plaintiff "repeatedly approached the Fulton County Superior Court and its Office of Clerk of Court for the filing in application for [sic] Writ of Fieri Facias[, but] Defendants

repeatedly rejected his filings[,] turning him away in deprivation of his civil rights." (*Id.* ¶ 35.)  Plaintiff brings eight claims against Defendant Robinson and the John Doe clerks in their official and individual capacities. Count I alleges a violation of Plaintiff's due process rights under the Fourteenth Amendment via 42 U.S.C. § 1983; Counts II and III allege the same under 42 U.S.C. §§ 1985(2) and 1985(3); Count IV alleges a violation of the Equal Protection Clause under § 1983 and § 1985; Count V alleges a violation of 42 U.S.C. § 1986 for failure to prevent a violation of Plaintiff's rights; and Counts VI, VII, and VIII allege violations of Plaintiff's right to access the courts, to equal protection under the laws, and to due process under the Georgia Constitution.   Plaintiff seeks $10 million in total damages, plus punitive damages.

## II.    Legal Standard

Defendant moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Rule 12(b)(1) allows for dismissal of a case when the court "lack[s] subject matter jurisdiction."  "Because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2002).  A Rule 12(b)(1) motion may present either a facial or a factual

attack on the complaint. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Here, Defendant brings a facial attack. Such motions are based on the allegations of jurisdiction in the complaint, and the court takes the allegations in the complaint as true. *Id.* at 1529.

Rule 12(b)(6) allows for dismissal of a case when the complaint "fail[s] to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a Rule 12(b)(6) motion, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully," and when the "complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement of relief." *Id.* (citing *Twombly*, 550 U.S. at 557). The complaint thus must contain more

than mere "labels and conclusions, and a formulaic recitation of a cause of action's elements"—it must allege facts that "raise the right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

In general, courts ruling on Rule 12(b)(6) motions to dismiss are confined to the pleadings; if they wish to consider extrinsic evidentiary material, Rule 12(d) compels them to convert the motion into a Rule 56 motion for summary judgment and to provide the parties with a "reasonable opportunity" to present additional relevant material.  *See* Fed. R. Civ. P. 12(d).  Courts may, however, consider certain "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" in connection with a Rule 12(b)(6) motion.  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

## III.  Discussion

### A. The State Court Order

Defendant moves to dismiss the complaint on several grounds.  The Court need only address three.  At the core of Defendant's arguments is the notion that this case is, in effect, an effort to mount a collateral attack on a state court sanctions order that Plaintiff could have, but did not, appeal. Defendant attaches to her motion a 2005 order of Judge John J. Goger of the Superior Court of Fulton County, issued in Civil Action No. 2004-cv-93291—

the case that Plaintiff alleges affirmed he was a "Creditor to recorded Judgment."[3]  (Doc. 9-1; Doc. 1 ¶ 25.)

That order, rather than recognizing Plaintiff's entitlement to a judgment in his favor, dismisses Plaintiff's action against one of the respondents and concludes as follows:

> [T]he Court notes that this is the second frivolous lawsuit filed by the Petitioner against [Respondent] Judge Grubbs, and that in the previous matter, <u>Tommy Lee Cox v. Wood & Meredith, LLP, Adele L. Grubbs, Judge, G. Conley Ingram, Judge, et al.,</u> Superior Court of Fulton County, Civil Action No. 2000CV24482, the Court sanctioned Petitioner for contempt after the Petitioner continued to file frivolous pleadings even after the Court had dismissed his claim.  Both matters were completely frivolous and without any basis in law or fact.  Therefore, the Court hereby orders that the Petitioner is enjoined from filing any pro se pleadings in the future without leave of court.

(Doc. 9-1 at 2-3.)

## B. The *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for

---

[3] Although Defendant introduces the order as an exhibit to her motion to dismiss, the Court may consider it here.  On a 12(b)(6) motion, the Court may consider "matters of which a court may take judicial notice, *Tellabs*, 551 U.S. at 322, and courts "may take notice of another court's order . . . for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation," *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).  Plaintiff has also filed a copy of the same order with his response to the motion to dismiss.  (Doc. 11-3.)

state appellate courts or, as a last resort, the United States Supreme Court."
*Casale v. Tillman*, 558 F.3d 1258, 1160 (11th Cir. 2009); *see D.C. Court of
Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Trust Co.*, 263
U.S. 413, 415-16 (1923).  It is an exceedingly narrow doctrine that the Eleventh
Circuit has recently emphasized "will almost never apply."  *Behr v. Campbell*,
8 F.4th 1206 (11th Cir. 2021).  It applies only in one situation: "cases brought
by state-court losers complaining of injuries caused by state-court judgments
rendered before the district court proceedings commenced and inviting district
court review and rejection of those judgments."  *Id.* (quoting *Exxon Mobil v.
Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  "The injury must be
caused by the judgment itself.  Period." *Id.*

Defendant argues that this Court lacks jurisdiction to hear Plaintiff's
various constitutional claims because, in essence, they all ask the Court to
review the Superior Court's order restricting Plaintiff's ability to file *pro se*
pleadings without leave of Court.  Plaintiff, they argue, meets all the
requirements for application of the *Rooker-Feldman* doctrine: he was a party
in the underlying state court case; the state court ruling was a final judgment;
Plaintiff could have raised his constitutional arguments against the sanctions
order on appeal, but did not; and his claims are inextricably entwined with his
state court judgment.  (*See* Doc. 9 at 6-7.)  In other words, "Plaintiff now

complains that his rights were violated by [Defendant] Robinson because she simply followed a judicial order.  His lawsuit, in essence, seeks to unravel and attack the enforcement of Judge Goger's Order." (*Id.* at 8.)  This, they argue, the *Rooker-Feldman* doctrine does not allow Plaintiff to do.

As an initial matter, the Court notes that the four-factor test cited by Defendant is no longer good law; the Eleventh Circuit "abandoned" it in *Behr*. *See Behr*, 8 F.4th at 1210 (stating that the Circuit has "abandoned the four-factor test that had previously guided this Circuit's application of *Rooker-Feldman*").  Although this case may nevertheless present a close call for *Rooker-Feldman*, the Court concludes that this is not "one of those rare cases" where the doctrine applies.  *Guy v. Fla.*, No. 19-12852, 2022 WL 1112878, at *3 (11th Cir. Apr. 14, 2022).  The reason is the nature of the relief Plaintiff seeks, which is monetary rather than injunctive or declaratory, and is directed at third parties—even if those third parties may only be enforcing a state court order.  In *Behr*, "the Eleventh Circuit  emphasized the importance of the complaint's prayer for relief: 'claims that seek only damages for constitutional violations of third parties—not relief from the judgment of the state court—are permitted,' whereas claims that directly seek relief from the state court's judgment are not."  *Guy*, 2022 WL 1112878, at *3 (quoting *Behr*, 8 F.4th at 1212).

Moreover, the Eleventh Circuit's post-*Behr Rooker-Feldman* cases suggest that the doctrine will rarely apply in actions solely for money damages. Instead, the doctrine seems (mostly) confined to those cases where a plaintiff seeks injunctive or declaratory relief that amounts to a "direct attack on the underlying state court decision." *Behr*, 8 F.4th at 1212 (quoting *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1288 (11th Cir. 2018)); *see Gay,* 2022 WL 1112878, at *3 (holding that claims were barred by *Rooker-Feldman* where the prayer for relief asked for a stay of state-court foreclosure proceedings); *Dahl v. Fla. Dept. of Hwy. Safety & Motor Vehicles*, No. 21-14499, 2022 WL 17076734, at *3 (11th Cir. Nov. 18, 2022) (holding that "[t]o the extent Dahl seeks money damages for the alleged constitutional violation, that claim also falls outside the narrow scope of *Rooker-Feldman*," while, by contrast *Rooker-Feldman* barred claims seeking an injunction against enforcement of a state court judgment or a writ of mandamus directing the state court to vacate the judgment).[4]

---

[4] *Davis v. Nahmias*, No. 21-14424, 2022 WL 5128153, at *3-*4 (11th Cir. Oct. 5, 2022), may complicate this post-*Behr* trend, since it held certain constitutional claims regarding an underlying state court proceeding barred by *Rooker-Feldman* without making clear what type of relief was sought. It appears, however, that the plaintiff in that case sought various kinds of injunctive and declaratory relief to overturn the state court's judgment—albeit perhaps in addition to money damages—a circumstance that makes it distinguishable from the present case. *See Davis v. Nahmias*, No. 1:21-CV-

A view of *Rooker-Feldman* that attends to the form of the relief sought is also consistent with *Rooker* and *Feldman* themselves, both of which involved plaintiffs who sought judgments vacating or effectively reversing state court judicial acts. *See Rooker*, 263 U.S. at 414-15 (plaintiffs asked federal court to declare state court judgment "null and void"); *Feldman*, 460 U.S. at 469 (noting that Feldman sought "a declaration that defendants' actions have violated the Fifth Amendment to the Constitution and the Sherman Act, and . . . an injunction requiring defendants either to grant plaintiff immediate admission to the District of Columbia bar or to permit him to sit for the bar examination as soon as possible"). Here, Plaintiff's prayer for relief does not ask the Court to declare that he is entitled to file his papers or to enjoin the defendants to accept them. Rather, he asks the Court to find that the defendants' actions violated his rights and to give him relief in the form of money damages. (Doc. 1 at 46-49.) Thus, because Plaintiff's claims seek only money damages for alleged constitutional violations by third parties, the Court concludes that they are not barred by the *Rooker-Feldman* doctrine.[5]

_____

2413-MHC, 2021 WL 6200499, at *3-*4 (N.D. Ga. Nov. 17, 2021), *aff'd in part, vacated in part, remanded*, No. 21-14424, 2022 WL 5128153 (11th Cir. Oct. 5, 2022).

[5] One case with almost identical facts to those here does need to be distinguished. In *Macleod v. Bexley*, 730 F. App'x 845 (11th Cir. 2018) the

## C. Absolute Immunity

Plaintiff's claims all involve alleged constitutional violations by court clerks, either individually or in conspiracy with one another. "Court clerks enjoy an even narrower ambit of immunity than judges and prosecutors. They have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction, and only

---

plaintiff, Macleod, brought claims for monetary, injunctive, and declaratory relief against a state court clerk who refused to accept a case for filing pursuant to a "state court order [that] prohibited Macleod from pro se appearances and barred him from making additional pro se filings." *Id.* at 848. The Eleventh Circuit held that the "the district court did not have jurisdiction to consider Macleod's complaint" under *Rooker-Feldman*, and that Macleod's claims were also barred by the *Younger* abstention doctrine and the clerk's absolute judicial immunity, insofar as Macleod sought monetary damages. *Id.* In the Court's view, *Macleod's Rooker-Feldman* holding is distinguishable because (1) the case pre-dates *Behr*; (2) the plaintiff sought declaratory and injunctive relief in addition to monetary relief; and (3) the case can arguably be read to hold only the non-monetary claims barred by *Rooker-Feldman*, as it would be unnecessary to consider the question of the clerk's absolute immunity if *Rooker-Feldman* deprived the court of subject matter jurisdiction over the money damages claims, too. The Court notes, moreover, that the district court in *Macleod* had held the claims barred by *Rooker-Feldman* only "to the extent Plaintiff seeks equitable relief." *See MacLeod v. Bexley*, No. 3:16-CV-1058-J-34JRK, 2017 WL 741139, at *3 (M.D. Fla. Jan. 31, 2017), *report and recommendation adopted*, 2017 WL 735388 (M.D. Fla. Feb. 24, 2017), *aff'd*, 730 F. App'x 845 (11th Cir. 2018).

qualified immunity from all other actions for damages." *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981).[6]

Each of Plaintiff's claims complains of an injury arising out of Defendants' refusals to accept his *pro se* filings in the Superior Court of Fulton County.   This is true of his § 1983 Fourteenth Amendment due process claim (Doc. 1 ¶¶ 32-41); his § 1985 conspiracy to obstruct justice claim (*id.* ¶¶ 42-49); his § 1985 conspiracy to deprive of rights claim (*id.* ¶¶ 50-57); his §§ 1983 and 1985 "class of one" equal protection claims (*id.* ¶¶ 58-75); his § 1986 neglect to prevent claim, which depends on the alleged wrongs underlying his other claims (*id.* ¶¶ 76-80); his Georgia Constitution right-to-the-courts claim (*id.* ¶¶ 81-92); his Georgia Constitution due process claim (*id.* ¶¶ 93-99); and his Georgia Constitution equal protection claim (*id.* ¶¶ 100-110).

It appears that Defendants were authorized—indeed, required—not to accept *pro se* filings from Plaintiff without leave of court.   (Doc. 9-1 at 2-3.) Under nearly identical circumstances—where a state court clerk "declined to file Macleod's pleading pursuant to a court order" that declared him to be a "vexatious litigant under Florida law"—the Eleventh Circuit held a state court

---

[6] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all decisions of the Fifth Circuit handed down prior to September 30, 1981, are binding precedent in the Eleventh Circuit).

clerk entitled to absolute immunity for all claims for monetary relief.  *See Macleod v. Bexley*, 730 F. App'x 845, 846, 848 (11th Cir. 2018).  That case is unpublished, but it is highly persuasive as to the proper application of the absolute immunity doctrine to these facts.  No great analytical leaps are required: according to a "court order," the clerks of the Fulton County Superior Court were "specifically required" not to accept any pro se filings from Plaintiff without leave of court.  *Tarter*, 646 F.2d at 1013.  Defendants, as sued in their individual capacities, have absolute immunity from money damages claims arising out of actions they took at the direction of that order.  *See id.*; *Macleod*, 730 F. App'x at 848; *Raghubir v. Parrish*, No. 21-11932, 2022 WL 17826349, at *3 (11th Cir. Dec. 21, 2022) ("Because the Orange County Clerk of Court's actions arise from duties that were given by judge's orders, the Clerk is entitled to absolute immunity.").

Plaintiff argues that the sanctions order barring him from making unapproved *pro se* filings is invalid because the Superior Court lacked jurisdiction to issue it.  The Court construes this as an argument that the original judicial act was taken in the "clear absence of all jurisdiction," *Stump v. Sparkman*, 435 U.S. 349, 357 (1978), and thus that this exception to absolute judicial immunity would also deprive the court clerks of their absolute

immunity, which "derives from absolute judicial immunity," *Roland v. Phillips*, 19 F.3d 552, 555 (1994).  That argument, however, cannot succeed.

In support of his contention, Plaintiff attaches another order from the Fulton County Superior Court, albeit from a different civil action involving Plaintiff, in which Judge Goger wrote that the Superior Court "lacks jurisdiction over this action" and dismissed Plaintiff's case.  (Doc. 11-2.)  To begin with, this statement is from a different case than the one in which the Superior Court issued the relevant sanctions order.  Additionally, the Court has been presented with no authority that undermines the validity of Judge Goger's sanctions order.  On the contrary, first, "[t]he power to punish for contempts is inherent in all courts."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (quoting *Ex parte Robinson*, 19 Wall. 505, 510, 22 L.Ed. 205 (1874)); *see Johnson v. 27th Avenue Caraf, Inc.*, 9 F.4th 1300, 1314 (2021).  It is integral to all courts' inherent powers that they have, in the exercise of their discretion, "the ability to fashion an appropriate sanction for conduct which abuses the judicial process."  *Id.*  These powers are "inherent" not because they flow from any specific grant of jurisdiction but because courts possess them "by their very creation."  *Id.* at 43 (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821)).  Second, Georgia law specifically authorizes courts to issue sanctions. O.C.G.A § 15-1-3 "provides that every court has the power to compel obedience

to its orders and to control the conduct of *everyone connected with a judicial proceeding before that court.*"  *Bayless v. Bayless*, 625 S.E.2d 741, 743 (Ga. 2006) (emphasis added).  This involves the power to "impose a harsh sanction" in connection with "the inherent power of the trial court who is charged with the efficient clearing of cases upon the court's docket."  *Id.*  at 742-43.  The Superior Court's action falls within this remit.

### D. Eleventh Amendment Immunity

To the extent that Plaintiff sues Defendant Robinson and the John Doe defendants in their official capacities, his claims are barred by the Eleventh Amendment.[7]  The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  "Although not readily apparent from the amendment's text, it has long been settled that the amendment applies equally to suits against a state brought in federal court by citizens of that state."  *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998).  "The state need

---

[7] The Eleventh Amendment protects states from suit in federal court for claims under both federal and state law.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984); *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dept. of Educ. ex rel. U. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003).

not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985)). Eleventh Amendment immunity is considered "surrendered" in three recognized situations: "(1) when a state waives its Eleventh Amendment sovereign immunity and consents to suit in federal court; (2) when Congress, acting pursuant to § 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so; and (3) when a state official is sued for prospective injunctive relief to end a continuing violation of federal law[.]"  *Id.* at 1278 (citations omitted); *see also Clarke v. McMurry*, 763 F. App'x 899, 900 (11th Cir. 2019) (same).

None of these situations is present here.  First, "Georgia has expressly reserved its sovereign 'immunity with respect to actions' that are, like this one, 'brought in [a] court[ ] of the United States.'"  *Clarke*, 763 F. App'x at 900 (quoting O.C.G.A. § 50-21-23(b)).  Nor did Congress abrogate Georgia's sovereign immunity when it enacted 42 U.S.C. §§ 1983, 1985, or 1986.  *See Quern v. Jordan*, 440 U.S. 332, 338, 342-45 (1979).  Finally, Plaintiff—as discussed above—seeks only monetary relief.

Thus, if Defendant Robinson and the other fictitious-defendant clerks of the Fulton County Superior Court are state officials, they are entitled to

Eleventh Amendment immunity.   Plaintiff, however, argues that the defendants are Fulton County employees, not state employees.

"Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise."  *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003).  The function at issue is accepting court filings, or, more specifically, refusing to accept court filings pursuant to a superior court judge's order.  "In Eleventh Amendment cases, this Court uses four factors to determine whether an entity is an "arm of the State" in carrying out a particular function: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity."  *Id.*

Here the Court need not conduct an extensive *Manders* analysis, for the Eleventh Circuit has previously determined that Georgia superior court clerks are state officials entitled to Eleventh Amendment immunity.  *See Kicklighter v. McIntosh County Bd. of Commissioners*, 694 F. App'x 711, 714-16 (11th Cir. 2017).[8]  In *Kicklighter,* the court concluded that the first three factors of the

---

[8] The district court's published opinion provides a somewhat more detailed analysis.  *Kicklighter v. Goodrich*, 162 F. Supp. 3d 1363, 1368-71 (S.D. Ga. 2016), *aff'd sub nom. Kicklighter v. McIntosh County Bd. of Commissioners*, 694 F. App'x 711 (11th Cir. 2017).

*Manders* inquiry weighed in favor of immunity, while the fourth factor weighed against such immunity, but that, on balance, the result was that superior court clerks were entitled to Eleventh Amendment immunity.  To be sure, the "function" at issue in *Kicklighter* was the clerk's power to fire an employee. But the Court can discern nothing in the court's analysis that turned on the personnel issues or that would not apply, *mutatis mutandis*, to the clerk's office duties to accept filings from litigants, or to refuse to accept such filings when directed to do so by a court order.  Accordingly the Court concludes that Defendants are entitled to Eleventh Amendment immunity for all Plaintiff's official-capacity claims.

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant Robinson's motion to dismiss. (Doc. 9). Defendants have absolute immunity from Plaintiff's individual-capacity claims and Eleventh Amendment immunity from Plaintiff's official-capacity claims.

The Clerk is **DIRECTED** to terminate this case.

**SO ORDERED** this 10th day of March, 2023.

SARAH E. GERAGHTY
United States District Judge